Good morning, Your Honor. May it please the Court, my name is David Shannon. I'm with the Federal Public Defender's Office in Tucson. I represent the defendant below, the appellant here, Mr. Norris. I did not represent him below. He was represented by Mr. Ralph Ellenwood. He was convicted at trial of three counts of aggravated sexual abuse of a child. We're here to challenge the convictions and the sentence. I need to say a couple of words about the Booker case, but nothing of any great extent. Pursuant to this Court's suggestion in U.S. v. Cortez, we filed a letter saying there might be a Blakeley issue in this case, but we did not brief it. Pursuant to the January 21 letter, we did no supplemental briefing. There's an issue that is not in the briefs that, under a fairly unlikely construction of Booker, might be of interest. I'm just going to mention what it is. The one of the enhancements to the sentence in this case, under the sentencing guidelines, was that the child in question was under the custody and control of the defendant. There was testimony to that effect, but the jury was not asked to make any decision. There have been some district court cases applying sort of an apprendiized guideline system under Booker. I think that's an unlikely result. But if it were the result, that issue would surface in this case. I'm not going to argue the issue because I'm not arguing Booker today. With the Court's permission, I have a question. I'm not sure I understand your argument. Are you saying that Booker applies to this case or not? Well, Booker applies to this case, Your Honor, but the way Booker is going to be construed in this circuit is probably going to be determined in the Ameline case. As my understanding, it is in that case that the Court has actually asked for briefing. District courts around the country have treated Booker differently. One strain of cases that has come up has been a situation where, in I think a fairly strained construction of Booker, district courts have said that they are going to treat the guidelines as advisory, but they are going to calculate the guidelines using some apprendi criteria, in other words, requiring proof to a jury or proof beyond a reasonable doubt. Were that the case? So in essence, you're saying that we should just remand the case back so the Court can apply the guidelines as advisory only. It's pretty much. Well, yes, particularly if the Court decides that that's going to be the sort of across-the-board result in many of these cases. What I'm pointing out is that there's an issue in this case about that particular enhancement that is not briefed because it was a Blakely-type issue, a Booker-type issue on which we were not asked to do any briefing. And it's your view is that's not a finding that the jury had to make in order to convict the defendant? They did not have to make that in order to convict him, no. All right. Okay. What I would like to turn to first is the two related corpus delicti issues because they have the most, I think, complex factual underpinning and are perhaps the most difficult to understand on a cold record. What we're claiming in these two separate claims is, first, that there was no corpus delicti evidence to support the confession in this case, and the confession was the only evidence for counts 2 and 3. So we're challenging those convictions because there was no supporting evidence for the confession. That's a fairly straightforward claim. Are you disregarding the testimony of the child? I am not, Your Honor, and I will go through the testimony of the child. But the child did not testify to anything regarding counts 2 and 3. That is also important for this issue is also important for count 1, but in a more attenuated way because we're claiming that that same corpus delicti principle should be a requirement when evidence is admitted under 414. Let me turn directly to your question about what the child did say and what the child did not say. The ñ well, first, as a preparatory matter, I don't think my briefing was as clear as it should have been on what the requirement is under Corona-Garcia. But under Corona-Garcia, the requirement of additional supporting corpus delicti evidence is twofold, and it requires independent evidence of the core elements, not all of the elements of the offense, and that's where Corona-Garcia makes its mark. But there has to be some evidence of the core events. Our language is it fortifies, augments, or supports. Right? Well, that is part of the language, Your Honor. Well, that's the language that we're going to be dealing with as to trustworthiness, isn't it? Isn't that the distinction that drew the fire of Judge Reinhart, that we're lowering the standard in some way? Well, in the trustworthiness prong, that is the language. But if you look at what happened in Corona-Garcia and what the Court said about the elements prong, the Court said that independent evidence was not necessary to establish the whole of the corpus delicti, but such evidence, i.e., independent evidence, must support the essential facts admitted sufficiently to justify a jury inference of their truth. That's from Corona-Garcia at 210 Fed 3rd 978. And if you look at the facts in Corona-Garcia, Corona-Garcia was an illegal entry case. And what the Court looked at in making this analysis is Corona-Garcia, they looked under the first prong as to whether there was evidence to show that he had, in fact, reentered. And that is the evidence that was found sufficient in Corona-Garcia. There was actually specific evidence to support the core element of the offense. If I understand you correctly, what you're saying is the modification of Corona-Garcia goes to the second element, having to do with trustworthiness. In part, Your Honor. But what in part, because what's the Let me let me then make it less in part. Does the requirement that the evidence fortify, augment, or support go to both prongs? No, Your Honor. That is the second prong. It must fortify or support the trustworthiness of the confession. Okay. The first prong is that there must be I understand what the two prongs are, and I understand what Carter I just want to know if your reading of Corona-Garcia was different from mine, and it isn't. So I'm sorry, Your Honor. I couldn't hear that last. I withdraw my question. The so the element under Corona-Garcia is that we have to have some evidence, not just the confession, some evidence related to the core elements of the offense, turning then to what we actually have in this case. The government has alleged in its brief that there were three segments in the transcript where there was supporting evidence, but this is just not correct. They discussed the testimony of the mother, which I believe is in the excerpt beginning at page 168, but what actually is said in the excerpt at pages 167 through 168 is that the mother is asked. Well, let me give a little more background as to what she was asked about. She was asked about a prior molestation of the child by the child's father, which had occurred one year before the alleged Thanksgiving molestation in this case. And she was asked about that, and then she was asked, now, in between those two, were there any reports or anything from school, any indication of anything wrong? The answer was no. That's on Excerpt 167. She was asked if there was any unusual behavior. She says no. That's on 168. Okay. Let me ask you something specific, if I could, and maybe you could answer this question. It would help me. Your argument now doesn't go to count one. It seems to me that that's a very weak argument to say that there is not some corroboration for count one of the core offense. Your argument goes more to two and three. That's correct. Okay. We do have one piece of evidence of opportunity. That is, the victim was, in fact, with the uncle. But you're saying, as I understand it, that there's nothing in her testimony other than the Thanksgiving episode. Nothing in that testimony goes to either two or three, the summer episode or episodes. That's correct, although I do question the evidence of opportunity because I have examined that language, which is on page 168, extensively. Well, I mean, the testimony was she was up there in the summer, and I suppose that is some evidence. But let me get to my point. Your Honor, to clarify, I don't believe it says in the summer. She was asked if the child had been with the defendant at other times, and she said yes. Okay. But she does not say anything about the summer or any period of time. All right. So that at least corroborates that she had been in his home at other times. Okay. Now, count number two goes to what type of action, activity? I believe count two is the – I may have them reversed, Your Honor. One is the manual touching, and one is the touching with the penis. Okay. So one is the manual touching. Let's focus on that. In her testimony, she talks about manual touching. There's nothing in – I think count three is the one that's manual touching. I could be wrong. There's nothing in her testimony about count one of manual touching. So we do have her testifying to manual touching at some time. There is a separate count for manual touching. Why isn't that sufficient of the core evidence that, in fact, she was manually touched at some time, and that time was not during count one, apparently, because she did not testify to that or it's not charged to that? Your Honor, it is not charged in count one, but I disagree with the characterization of the testimony. If you look at her testimony, there are two segments of it. One is at pages 190 through 194. The other is at around pages 200 through 201. Okay. If you look at what the government relies on, the government cites page 191 through 194, but does not cite page 190. If you look back on page 190, this is in the girl's testimony, she is being asked about what happened. Yeah. And? Line 13. Okay. And she says that this happened once. Okay. But in context, at line 13, okay, what did he do that made you feel uncomfortable? He did sex to me. Then, okay, and did this happen one time or more than one? I think once. Not once. I think once. Now, then you have to go back to what she's talking about. He had sex with me. Now, what does a seven-year-old trying to recite what happened when she was five, what does she mean by sex? You're assuming that it's very broad, that it meant everything. But that isn't necessarily so. Sex may mean the actual touching, not the hand. So I'm not sure, I'm not sure in my own mind that that argument carries you as far as you'd like to have it. Don't we have to consider the circumstance, here's a seven-year-old girl in a courtroom in which the defendant is her uncle, in which there's apparently a close relationship and apparently he's a nice man from everything we can tell you. Why do you, why do you, why, on what basis can we say that that's so exclusive that it rules out count three, the use of the hand? Your Honor, count three was alleged as having occurred in the summer. And the issue we're talking about here is the corpus delicti evidence supporting the confession which dealt with the summer. So the issue is, did the victim say anything about anything happening in the summer, anything that might support what the defendant confessed in the statements that we're questioning? If you look, if you read this straight through from page 190 through 194, you see what is happening. The prosecutor is asking the girl about what happened on this occasion. And she recites all the things that happened. And she is asked again at the end of it, I think on page 194, did this happen once or more than once, and she says, once. And I think an important thing to look at would be to think of how did this appear to the district judge. And you can find that out at page 259. Or the argument that's going on here is that the district judge is asking the girl about what happened on this occasion. And you can see there, okay, you stated, T.V., that your Uncle Johnny touched you with his dick on your privates. How many different times did you do this? Once. Now, that doesn't fulfill your argument. It says nothing about the hand. It talks about the dick, the penis. So I don't see how that necessarily indicates that she didn't, she doesn't mean that on another occasion the hand was used. One would just have to read the testimony. But if you read it again, and particularly look at the 200 to 201. I understand. I've read it and re-read it. It just seems to me it's general, which I would expect from a 7-year-old. That could go either way. But that's the reason she's on the stand and why the defendant is counseled and has an attorney to be able to cross-examine her and bring out these specifics that you wish to argue now. If it doesn't do that, why can't we just use what we would rationally think a 7-year-old is talking about, unless there's something more specific? Well, Your Honor, the district judge who saw this testimony, heard the whole thing, also heard the argument regarding whether there was corpus delecti evidence for count 3, count 2. This is page 259 in the record. And his summation of what happened is that regarding count 3, this is quoting the district judge, as I remember the testimony, she said that she was given a couple of opportunities to say whether or not this conduct had ever occurred before, and I think she insisted that it had not. And I think that is a fair reading of what is in the transcript. And I think it's not a fair reading of the transcript to say that anything in there indicates more than what happened in Thanksgiving time of 2000. The other thing that happened in this case regarding her testimony is that the prosecution asked her, you say, why didn't the defendant come forward and say, why didn't the defense go into this? The prosecution asked her a number of times, as the judge mentions there, tried to get her to say that this had happened on more than one occasion, and she said no. It would have been foolhardy for defense counsel to then step up to the podium and say, please, tell us, you know, let me ask you one more time, didn't this happen more than once? That would have been insane from a point of view of trial strategy. He had the answer that he wanted in the record, which was that it had only happened once. Sex happened once. According to her testimony, touching with the penis happened once. Sex happened once. The dick happened once. I don't agree with that, Your Honor. I just read it. I'm sorry. Well, she said I had sex. I'm not sure exactly what you mean with that. She was then asked specifically to draw on a chart what had happened. And there was no evidence of penetration. What she drew on the chart was touching with the penis, touching with the hand, and touching with the penis to the mouth. Those were the three things that occurred. But there was no indication that they had occurred at any time other than Thanksgiving of 2000. And the doctor's testimony all fits in with that. The ‑‑ I think I've come close to the end of my time. I would like to have a chance to respond to what the government has to say, particularly about these factual issues. So if I can, I will just reserve my time on that. All right. Thank you, counsel. May it please the Court. My name is Nathan Leonardo, appearing for the United States. The ‑‑ I think the Court is correct in pointing out that the victim was 5 years old at the time this occurred, these events occurred, and 7 years old when she was testifying. Her uncle was in the courtroom. I think it's understandable that although she testified to three instances of criminal contact, sexual contact with her, she was unclear with regard to time of death. And one of the incidents that she talks about, namely that the defendant put his penis in her mouth and peed in it, was not confessed by the defendant. So there is ‑‑ it is somewhat ambiguous, this testimony. Counsel, would you articulate for us where in the record, in your view, there were three specific incidents that were discussed by the child? Yes. Let's see. Okay. Let's see. Her testimony, well, on page 191 of the excerpts of record. Let's call it incident number 1. There's two incidents there, I believe. Okay. And that's at page 191? Yes. Of the excerpts of record. And what would those two incidents be, 1 and 2? 1 is on line 9, where she testifies, he put his dick in my private thing. Then on line 18, oh, then she's asked on line 17, did he put his dick anywhere else? She says on line 18, in my mouth. And then ‑‑ Okay. But you admit that that doesn't ‑‑ are you saying that corroborates the confession? Well, I think that her testimony does corroborate the truthfulness or fortify the truthfulness of the defendant's confession. Kind of in a global sense, not the specific. That's correct. Okay. I understand. I think the defendants ‑‑ the defendant admitted to each of the charged counts. And the ‑‑ his statements came ‑‑ were completely voluntary. They weren't coerced in any way. They were ‑‑ the government would submit that they are actually reliable in themselves because they were against his penal interest. And this type of crime specifically is the type of crime that you wouldn't normally admit to voluntarily. Or make up, essentially. I understand. But under the law, there has to be some corroboration. So we're discussing that at this point. So you have incident one and two. You're saying line nine and line 18. And then what's incident number three that you're referring to? That would be on ER 201 and 202. That's the hand? That's the hand. And I believe she also says on those pages, I think she says that this is happening at the defendant's house, which is another thing that is corroboration. And the mother, of course, testified that ‑‑ and this is one thing that I wanted to point out also. The mother testified that the victim was at the defendant's house in the summer of 2000. It wasn't at the pages referenced by defense counsel, which was, I believe, he was pointing to page 168 in the ER. It was on page 178 in the ER where the mother is talking about the defendant and saying that the victim stayed at his house and was asked if she stayed at his house in the summer of 2000. And the mother stated yes, she did. So there's the victim's testimony and the mother's testimony that corroborates and fortifies the truthfulness of the defendant's confessions to each of these acts. Let me ask a specific question in that regard. I can see the argument, as we discussed with counsel, about count three, the hand episode. It's specific, and that's in there. But count two has to do with the penis, and that, of course, is in count one also. I'm having difficulty finding in the record where there is corroboration for the act of using the penis in count two as distinguished from count one. I see the hand argument because the hand is involved in one. But what about count two? What is the specific evidence of the core episode for count two at the different time in the summer as distinguished from Thanksgiving? Well, that was one of the counts in the summer of 2000. So the mother did testify that the opportunity was there because the victim was at the defendant's house in the summer of 2000. That's one piece of corroboration. And the other piece of corroboration is just the general corroboration of the victim's testimony in confirming these sexual assaults generally that fortifies the truth. Let me see if I argue. I don't know. Maybe you're right. But if I understand your argument, what you're saying is that you've got it of one, you've got it of three, and there's some general discussion. We don't know where it is. But that should be sufficient for two, that it doesn't have to be specific. He put his penis in me in November and the following summer, that if there's general corroboration of enough, that that is sufficient for testimony of the core act? I believe so. If the corroboration is enough to fortify the truthfulness of the defendant's confessions. Because we have to remember the defendant confessed to that act, and this wasn't something that was elicited out of, you know, by torture or some kind of coercive circumstance, which is what the corpus delecti rule was intended to avoid. I understand that argument. I want to know what's your closest case that would allow us, when there's not specific corroboration for a core crime in one count, but there is in two other counts, that this the generality of her evidence is sufficient to cover all three. What's the best case? Well, I think that Lopez Alvarez, well, I'm not sure about the specific facts, if there's a, that's this specific scenario, but the language in Lopez Alvarez and Corona Garcia, I think, supports that proposition that the, this corroborating evidence, corroborating the truthfulness of the defendant's confessions is enough. It's a low burden. And, in fact, in Lopez Alvarez, I believe there's even language saying that even accepting that requirement when a confession is, due to special circumstances, inherently reliable. So, Counselor, if I understand your argument, it's our task is to determine whether or not the truthfulness of the confession is corroborated, not the details of the confession. Is that your argument? That's correct. I think it's just to ensure that the defendant isn't just making all this stuff up, and since, since he is not making up, these other things show that he is not making his general confession up, essentially, is what the argument is. Counsel, I'm, and I neglected to mention there's also the 414 evidence that corroborates his. I'm sorry. The 414 evidence that was admitted, that was also corroborates his confession. Yes, I want to make sure I've got this right. You've got, you have three counts that are charged by the grand jury. First, the Thanksgiving or November of 2000, which the grand jury charges as, as a, as penis to her private parts. The second is summer of 2000, which is also penis to her private parts. And the third is hand to private parts, also in the summer of 2000. Now, I don't see anything in there that would suggest oral sex as to which she testifies. Is that an uncharged count? Or what are we counting that for? That is uncharged. And I think that just is probably the result of the nature of this kind of offense and the testimony of a woman. All of the testimony that she offers, that he, that he put his penis in her mouth, then, is not a charged count here. That's correct. But I think it does show sexual contact, which corroborates the fact that there was sexual contact. But now, now the, the difficulty then that we're, that we're having here is, is between count one and count two, which both charge similar contact, but at different times. Correct. And she has testified that he put his penis in her private parts once. Correct. Yeah. She thought it was once. So how does, how does count two stand? Well, again, it's, my argument is that the general, the general corroboration that, that provided by the victim's testimony as to the one time that this happened, that there was a sexual assault and the fact that there were other instances of sexual abuse corroborates his, his confessions generally, as does the fact that there was an opportunity. So the fact that she testifies to conduct that is uncharged should corroborate contact to which she cannot testify, she does not testify. Well, it may be because she is young that she's confusing that contact with other contacts, but the, the basic argument is not necessarily that that testimony about the penis in the mouth is necessarily corroborative, but just that the fact that she's testifying about being sexually abused is corroborative. And that, and we don't rely necessarily on specifics of her testimony as much because of her age and the circumstances of the trial with her being, accusing a relative and so on and so forth. And as I understand it, your best case for this is Lopez-Alvarez? That I can cite right now, Your Honor. I've just read Lopez-Alvarez again, or parts of it that I was interested in. I, I, I don't think it would do any good to read them to you, but it appears to me that it's an upheld battle if you're relying specifically on Lopez-Alvarez. Because you have to introduce independent evidence of the corpus delicti in conformance with the traditional test, sufficient evidence to establish the criminal conduct that the core offense has occurred. And what you're saying is because you establish that for count one and for count three, you've automatically done it, or you've automatically done it for count two. And I'm not sure that follows from Lopez-Alvarez. But if that's the best case that you got, why, why, we'll study it carefully. I'm, you know, I'm relying on the language from that case as well as Corona-Garcia. And the Miller case, too. But factually, I'm not sure which is the best case for me. But. It's up to you, Counselor. You're the government's representative. You've got to tell us what's your best case. We've, we only listen to what you have to say. I'm going to throw all those out there. Okay. As far as, and I don't, I don't know if the Court would like to hear about any of the other issues in the, in the case or not. If not, then I don't think there was anything else that I, essentially. Well, I would like to say as far as the 414 evidence goes, the defendant is basically asked, and this could contribute, could have contributed to some of the confusion in the victim's testimony. There were other instances of sexual assault that were precluded, the government was precluded from getting into. It dealt with the defendant's relatives as well. And so there may have been multiple instances with this victim. And so the penis, the mouth, and the other ambiguities in the testimony may be explained by that. But the 414 evidence of the defendant assaulting, sexually assaulting the victim's sister, who was about the same age, did not require any kind of corpus electi. And that corroborates, because that, that is corroboration. Essentially what the defendant is asking this Court to require is corroboration of corroboration by requiring corpus electi in 414 evidence. But that, that instance also supports the defendant's confessions to all three of these acts. And if the Court has nothing. I'm just curious as to why you thought that Lopez-Alvarez was your best case as opposed to Corona-Garcia. Well, I don't necessarily think that. I think they're both, and I'm not familiar with specifically if they, the facts of those cases support the facts of this case. So I, that's why I throw all of them out there. But I think that both, the language in both of them supports this case. All right. Thank you. There appear to be no further questions. Thank you for your argument. Rebuttal. Your Honors, I think the, that the only thing that hasn't been discussed regarding these facts, I'm not going to go back over the facts. I think we've all pretty well beaten them to death on this. But the one other place in the transcript I would urge you to look would be at the testimony of the agents who actually put the purported confession in this case. These are at pages 247 and 252. These are two different agents who discussed the matter. And there are two things about that testimony I would like to mention. One is that they say that the defendant admitted to contact with the penis and contact with the hand. They do not say that he said anything about oral contact. And I think this goes to the issue that was being raised about what sort of contact did the victim talk about and how it plays in with the actual confession. The other thing is that the agents talk about the November event and about one time in the summer. They actually only talk about one event in the summer. The one confusion in there is that one of the agents talks about November 25th, and I think the other one mentions September 25th, but I just want to caution that he also says he's relying on the other agent's report. And there's another spot in the transcript, I think it's in the excerpt at 259, where the judge refers to that as the confusion about the date. And I don't think there really is. If you read the whole thing, I don't think there really is any confusion. When the agent used September 25, he really meant November 25. He was questioned on it, and he said, well, I'm relying on his report, I'm not sure about the date. So that September 25 date is sort of a red herring in there. And actually, I guess the facts are what they are. We may read them the same, we may read them differently, but I think a fair reading, not isolating the statements of the victim, but reading them all together, indicates that she also was talking about just one event. Thank you. All right. Thank you to both counsel for argument on this case. The final case on calendar for argument today is Posnansky v. Gibney. Thank you. Thank you, counsel. Please proceed. Thank you. May it please the Court, my name is Don Schott. It's my pleasure to represent Mr. Charles Posnansky in these three consolidated appeals. There are a number of issues raised by these appeals, and what I would like to do is skip a little bit and go right to the third argument, or the third issue raised in our appeal, which is whether or not the Arizona District Court judge aired in his application of the Arizona statute of limitations
judges: Wallace, Rawlinson, Bybee